Good morning. May it please the court. My name is Douglas Steinberg. I represent the appellate in this matter, Christian Dante Hood. Facts of the case, a brief recitation of the facts of the case. Before you recite the facts of the case, can you just tell me what you're appealing? Because the contents of the phone were not used at trial, right, and no statements about the phone were used at trial. So what does this appeal? Okay, Your Honor, the issue is that my client made several incriminating statements that were used at trial on the belief that the law enforcement had successfully opened his phone. Okay, so which statements were improperly admitted? Well, he, amongst other things, admitted that he was to his nickname of Bessie. So we're talking, I just, I really do want to know, so it's the nickname statement? And that he knew certain parties in the case. Obviously, he knows his brother. I think that would be a fairly stupid denial, but that he had heard of the victim in this case. And the, and basically connecting the dots from his own statements of being, of knowing these parties. So these are the two statements. You think that this is an appeal of the admission of his nickname and that he knew the parties in the case? Well, also, it does allow, their entry into the phone does allow them to know that his email is on that phone. But no evidence about the fact that the email was on the phone was used at trial, right? I thought no information about the phone came in at trial. Is that not right? The emails come into it and they still connect my client to Bessie. But they had his email. They did. I really, I just, I find this case very confusing because I am trying to figure out what the appeal is of. So it's, the appeal is of the denial of the suppression motion as to the statements about his nickname and that he knew the parties in the case. And, Your Honor, the basic factual recitation that he gave that was actually used at closing about, by the government. Didn't he wave Miranda? Yes, Your Honor. But this is still part of the jig is up issue here. Once they got into the phone. But that's not a thing. I mean, the fact that a suspect thinks that there's physical evidence that would tie him to a crime, we've never said that that would render your waiver of your Miranda rights involuntary. Well, Your Honor. That happens all the time. Your Honor, I think that his belief that they were in his phone, which turns out they were not, did lead to him making these. It might well have. But this happens all the time. And sometimes it's not even true. Sometimes detectives will say, we have your fingerprints on the scene. And so Miranda rights are waived and courts consistently say that's voluntary. Your Honor, I think that the information that my client had and, for instance, the use of his statements at closing do relate to the fact that he basically gave him access to the, believe they had access to the phone, including giving up his password. And I think, Your Honor, I think that's the connection. Your Honor, I also wanted to, Your Honor, state in arguments over the phone, today technology has provided citizens with shortcuts to entering passcodes by utilizing biometric features. The question, then, is whether a suspect can be appealed to use his finger, his thumb, his iris, or other biometric features to unlock a phone. An important issue here for this court to consider in this issue, simply because technology has continued in advance and created a way for the public to access their private information on the phone in a much faster, easier way, that that should not constitute a waiver by the public to the government that they are allowing access to private information simply because they want it. It just seems like this would be a really important question for this court in a case where, A, a thumbprint actually opens a phone, and then, B, the contents of that phone are admitted at trial. But I just don't see how it's presented here. Well, Your Honor, I think it's, as I stated, or I'm trying to state as best as I can. Yeah, that there's this connection between what he thought had happened, which is that his phone had opened and that they could review it, and then his later use of the information that spilled out from that belief. And I think that is the connection to why my motion to suppress should have been granted. But even if it would be a Fifth Amendment violation to use a thumbprint, force somebody to use a thumb to open a phone, I thought the theory would be that sort of it's an active production theory, like once you use your thumb and the phone opens, you've sort of proven, well, that's my phone. I have access. Right. Right. But here it didn't open. So I don't even see, even if we thought the Fifth Amendment question was presented here, this seems like a really bad case for it in that there was no active production knowledge gleaned from using his thumb because the phone didn't open. Well, it does then occur. Okay. So they attempt to use. Right. But I'm saying, so what's the Fifth Amendment violation? It didn't tell them anything about who owned the phone. It didn't work. If anything, it was sort of a good fact for him. Maybe it's not my phone. I mean, this just seems, I totally understand the importance of the question you're raising, and it seems like an important and difficult question, but I've just never seen a case where there's so many layers where it kind of goes astray when you're trying to get at the issue. Well, Your Honor, I've always looked for a perfect fact pattern, and as a criminal defense attorney for some time, I haven't found it yet. But the fact that the phone didn't open led to him being questioned, and one of the first things he gives up is the passcode so they can enter the phone. And what prior act forced him to give that information? At that point, he thinks they're in, and he's being asked, and now I have to engage in some speculation. But what fact? I'm sorry, Your Honor. What prior fact caused him to give his information's passcode? Because, Your Honor, the fingerprint, he thinks they're in. But he knew that didn't work. No, he did not. He didn't know that. He did not know it. That's the critical issue is that the phone was taken from him. But you do know the case law says police officers can actually lie to you. There is that. They can say, you know, we got 10 people lined up waiting to say that you were in that bank. Right. And the truth is they don't have any. You do know that, right? They can do that. And upon hearing that, if you said, all right, all right, okay, I did it. It's not a, you can't say, oh, I waved because I thought you were telling me the truth when you said you had 10 people against me. Otherwise, I wouldn't have to confess. And that wouldn't get very far, would it? Well, Your Honor. Would it count? I understand the hypothetical. I ask that you understand. I'm asking you a question. Would it get very far in terms of a constitutional challenge? I think it could, Your Honor, in a sense, if it was considered to be a threat. Or if it was done in a heavy-handed manner, it could be. Oh, you mean when they said they were beating him? Yeah, I think so. Well, or berating him. You know, Your Honor, I don't want to spend too much time on what's happening in your hypothetical. I think there could be an issue. But I might be interested in it. Yes, Your Honor, of course you are. Isn't that right? But the issue here is because the warrant directs this action, that they can use his finger, unlock the phone, and he believes that that's what's happened. So are you making a Fourth Amendment challenge to the warrant, the scope? Well, I did it as a motion to suppress. Your Honor, I did not file that motion on scope. Your Honor, also I want to mention that at trial, right before, after the opening, or sorry, after the arraignment, but before opening argument, my client's brother, Mr. Mangora, co-defendant, pled guilty to all four counts. As I raised in my brief, I, using my detective hat, decided that perhaps someone pleading guilty to all counts could possibly be an important witness for the benefit of my client. As I stated in my brief, Your Honor, his brother decided to fall on his sword, and then I had to determine whether any of that could have been a shield for my client. Things were moving fast in the trial, obviously, and counsel for the defendant took off for Mr. Mangora. We were able to locate him. I did make a request that I would like to interview or to talk to Mr. Mangora to see if there was anything that he would say that would be exculpatory about his brother. The court ruled that the, under U.S. v. Mitchell, that Mr. Mangora's Fifth Amendment rights were a complete bar for me doing this. And I actually agree to some extent, I'm conceding the fact, that I have a lot of trouble with the current case law of establishing that hurdle of whether that testimony was going to be good or bad for my client. And this is to keep people from just subpoenaing the President of the United States or somebody down the street and then say, look, I didn't get my fair trial. Here we have somebody who's obviously, even under the government's theory, present at all times. So it's not like it's a random attempt to talk to a potential witness. This is somebody who's there. And then that, I think, falls into my client's right to compel witnesses on his behalf, which is meant to be sort of an equalizer with the government's ability to subpoena people as well, and Mr. Mangora's Fifth Amendment rights to remain silent. And I do agree that he probably does, under Mitchell, although there's not much case law about this, has a Fifth Amendment right, but now we have two constitutional rights sort of battling it out. I think it could have been done in a way where I would be permitted to interview Mr. Mangora, maybe in front of a magistrate judge, maybe under seal. So whatever he does say, potentially, which was incriminating or not, and what rights he decided to evoke at the time, you know, and then allow me to review that and see, look, this is still going to be a good witness, and therefore we should go forward. I do agree that I had some trouble in my brief, but I think both sides are engaging in speculation as to what Mangora would have testified about. He pled guilty to this conspiracy, but one of the critical facts was that he was doing most of the actions. Well, who has the burden here? If nobody really, I thought that the burden was on the defendant to show that the testimony would have been favorable. Your Honor, the problem is with a complete ban. I mean, I can interview him before trial, obviously. He's a co-defendant, and I'm out of time. May I finish my response? Certainly. I couldn't talk to him before trial. He was represented by counsel. Obviously, that wasn't going to happen. And then when I'm told by the judge, you can't talk to him. You know, this is the force field comes down. It makes it, in this situation, extremely hard to meet that burden. My suggestion would have been perhaps if I could have interviewed him sort of offline with counsel present, all those protections in front of the magistrate was sealed, then I could at least be able to then go to the court and say, this is a great witness for me. He's going to say that, you know, XYZ happened. His brother was out, you know, doing something and not really involved. Or I might say, I'm never going to call this guy in a million years. He's blaming his brother for everything. But I couldn't get there, and I think that's the problem. But we know that Mr. Bangor knows, because of his plea, which was accepted, a lot about the case. Thank you. Ms. Cain, do you have anything? Good morning, Your Honor. May it please the Court. My name is Maureen Cain. I represent the United States. If Your Honor has specific topics you want me to address right off the bat, I'm happy to do what Your Honor's request. Otherwise, I was planning on getting into the Fifth Amendment argument first, tied to the cell phone. The United States does not believe that there was any Fifth Amendment violation by placing fingerprints on the defendant's cell phone, because fingerprints are simply not testimonial. Do we have to reach that issue in this case? I don't believe so, Your Honor, unless Your Honor buys into this fruit-of-the-poisonous-tree doctrine that the defendant is trying to get to with the confession. However, that argument fails as well, because the fruit-of-the-poisonous-tree doctrine does not apply if there's no poisonous tree. Placing fingerprints on a phone is not testimonial. So are you suggesting that if putting fingerprints on a phone was testimonial, then this motion to suppress should have been granted as to the statements? No, Your Honor. But that seems to be what the defendant is trying to argue. It is. But I guess what I'm trying to figure out is why anybody thinks we have to reach the Fifth Amendment issue in this case. I don't believe Your Honor needs to. And with respect to the statements that the defendant brought up, those were Mirandi's statements. He knowingly, voluntarily, and intelligently waived his murder rights. So that's that. And so the statements were fair game as well. So we do not believe that there's any sort of Fifth Amendment issue here. With respect to the defendant's testimony. Can I ask you another question? Even, let's assume, hypothetically, that there were problems to those statements, were those statements particularly material to the trial, the nickname, and that he knew the parties in the case? No, Your Honor. Was that not otherwise established? I apologize, Your Honor, for cutting you off. We believe it was otherwise established through the victim's testimony, and we dropped a footnote in the brief talking about harmless error to the extent that this court found any sort of problem with the Mirandi statements that came in at trial. With respect to the defendant's argument about Mr. Bangora's Fifth Amendment right, the case law is very clear under the Supreme Court and with the Fourth Circuit, United States v. Carithers. That's directly on point to this case. The Fourth Circuit found that there was no abuse of discretion when the district court rejected the defendant's request to call a convicted co-defendant as a witness when the co-defendant had not been sentenced yet and asserted his Fifth Amendment rights. And with respect to this claim that he should have still been able to interview Mr. Bangora, the Sixth Amendment does not require anyone to submit to an interview. It requires people to come to court with the compulsory process. However, the Fifth Amendment trumps the Sixth Amendment if that individual asserts their Fifth Amendment right, which is what happened in this case. I have nothing further unless Your Honor has more specific questions for me. Thank you, Counsel. Thank you, Your Honor. Mr. Steinberg, you have some time reserved. Thank you. Your Honor, the facts of the case cited of the Fourth Circuit case that is in regards to the calling of a witness, the facts of that case is that somebody in that situation wanted to call a witness who later after the trial or after had decided that he was going to waive his Fifth Amendment rights and try to talk. And it was that the defense in that was trying to call that person essentially almost as a late witness. And the facts make that a little different in my case, Your Honor, because I don't think it is quite as clear in that case that it says that at all times Fifth Amendment rights trump Sixth Amendment rights. I think it was much more a fact-specific thing about whether he had really invoked his Fifth Amendment rights or had later changed his mind. I don't believe that is the clear ruling of that case. And my situation, Your Honor, or sorry, my situation, my client's situation, I think that we were in factually in a different arena. Here I am simply trying to follow through with my duty that I'm required to as an attorney to investigate all potential exculpatory witnesses for my client. And I absolutely believe that Mitchell does have a play in here that even though you plead guilty, there are Fifth Amendment issues because you could be facing more liability at sentencing if you continue to open up and talk about issues. But I think there is a process that could have been used that allowed me, as his attorney, to investigate this potentiality of calling him as a witness that was simply cut off by the court completely. And in fact, Mitchell just … And what do you think the standard review is for a judge who, as you said, cut you off from doing that, for this court? I believe that the standard of the review is it's a legal issue, so it's de novo. De novo as to whether or not they cut you off? Okay. Because it's an application of constitutional rights. So what constitutional right did you assert? The Sixth Amendment right to compel witnesses, Your Honor, and I have to only compel witnesses that I … And you subpoenaed him? I did not. You did? I did not. That's what compulsion is. Well, Your Honor, it's … At least you ought to frame the constitutional question if you're going to bring this to the court. First, you see I'm subpoenaing the witness, right? Because that's the Sixth Amendment right. If you don't do that, you don't activate the right, do you? Even then. Well, factually, Your Honor … It's not factual. That's very legal. If you're going to assert that, you first use access compulsory attendance by subpoenaing the person. Then you put it squarely in issue before the judge. Judge, now this is a constitutional Sixth Amendment. Not just my request. It's the Constitution's direct compulsory. They're here. If I may address this issue, Your Honor. You are. I absolutely shall, sir. But this was a surprise plea. In other words, and I believe the government would agree that no one saw this coming, that he was going to stand up and simply plead guilty with no agreement in front of all four counts. He was then whisked away to the jail. My trial was supposed to start in a couple hours. The judge, thankfully, gave me a little time so I could rewrite my opening and many things that I had thought of that I was going to do trial-wise. I was given some time. There was simply no opportunity. Did you ask for a continuance? I did. And it was denied? Yes. I asked for a continuance. Well, to be more accurate, I was given until next morning to basically rewrite everything and get ready to go in front of the court. And that's also when I decided to try to, obviously, I felt fairly obviously, investigate. So you had prepared your case and you had some idea of whether or not that person would be helpful to your client? The person? Well, I mean, Your Honor, when I was redoing my case, Your Honor, for a variety of reasons including the fact that there were now just one person in front of the jury and nobody else to really talk about, which might have been a potential defense I was looking at at the time. So I was preparing a lot of different things. But one of the ones that I was trying to do, and I alerted the court to, that I was going to see about the possibility of calling the brother as a witness. It was simply impossible for me to get a subpoena served at the jail in a few hours. If it is possible, then I'm wrong. I don't think that was possible. But the court did entertain and in chambers we discussed the logistics of trying to do this and then the ruling was I couldn't talk to him and that his Fifth Amendment rights were absolute in the case. Briefly state, Your Honor, also about the nature of, I'm sorry, about whether a cell phone fingerprint or other biometric data is testimonial in nature. I will state to the court that since the filing of briefs, there have been two court cases that I was able to find where in both of those court cases they did find that biometric information is testimonial in nature. In either of those cases, did the biometric information not work to unlock the phone? One we don't know, Your Honor, because a rule to show cause filed in Indiana for someone who refused to apply their fingerprint and the court agreed due to the fact that it was testimonial in nature, you don't have to do that. So we don't know. The other one was the denial of a search warrant that never got executed in which the same conclusion, and let me just cite that case. One case is Sal versus the state of Indiana Court of Appeals, 29805710CR2466, 2018, August 21st. The other one is search of a residence in Oakland, California, case number 41970053 in the United States District, Northern District, California, 2019. That was a search warrant that was denied. In either of those cases, did the government already know who owned the phone? Because the district court says that the government has already established ownership and control of the phone by lawful means in this case. So on top of everything else, isn't it sort of a, there's a foregone conclusion exception to this act of production, Fifth Amendment theory? Your Honor, in the Indiana case, they rule specifically that it's not a foregone conclusion. Well, it may not have been in that case. Right. This is my concern, that in this case it was a foregone conclusion. Your Honor, I think that they do not meet. I mean, maybe you think, we don't have to get into this. I'm sorry, I'm sorry. I shouldn't have raised it. We're good. We're good. Okay. Are there any other questions? Okay. Thank you. Thank you, Counsel. Ms. Steinberger, also note that you were caught upon it on behalf of the Fourth Circuit. I want to express our appreciation. We need lawyers like you to take these cases. It's very important, and we appreciate that. I consider it an honor. Thank you. And, Ms. King, thank you for ably representing the United States.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris